IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| ALLENE MARIE MILLER, | * CHAPTER 13 |
|     Debtor | * |
| | * CASE NO. 1:09-bk-03336MDF |
| CHARLES J. DeHART, III, Standing | * |
| Chapter 13 Trustee and | * |
| STOCK & LEADER, | * |
|     Objectants | * |
| | * |
| v. | * |
| | * |
| ALLENE MARIE MILLER, | * |
|     Respondent | * |

## OPINION

Before the Court are the objections of Charles J. DeHart, III (the "Trustee") and Stock & Leader ("S&L") to the claim of exemptions filed by Allene Marie Miller ("Debtor") in which Debtor seeks to exempt certain payments she receives from her former husband under a divorce decree. For the reasons that follow, the objections will be overruled.

### I. Procedural History

Debtor filed the instant chapter 13 petition on April 30, 2009. In support of her petition, Debtor filed a schedule of exemptions ("Schedule C") in which she invoked 11 U.S.C. § 522(d)(10)(D) to exempt an "income maintenance award" of $88,500.00 (hereinafter "the Award") she is receiving pursuant to the decree entered divorcing Debtor from Kim D. Miller ("Miller"). On May 18, 2009, S&L filed a proof of claim in Debtor's case for unpaid legal fees related to services rendered by the law firm in connection with Debtor's divorce in the amount of $101,908.58.[1] On June 9, 2009, S&L objected to Debtor's claim of exemption on the grounds

---

[1] Debtor listed S&L on Schedule F as holding a disputed, unsecured claim in the amount of $108,000.00.

that the Award was not subject to the provisions of § 522(d)(10)(D). On September 8, 2009, the Trustee filed an objection on identical grounds. A hearing was held on October 21, 2009, at which time the parties stipulated that the sole issue to be decided by this Court was whether the Award qualifies as alimony, support, or separate maintenance reasonably necessary for Debtor's support as provided in § 522(d)(10)(D).

S&L and Debtor filed briefs. After reviewing the record in the case, the Court requested the parties to file a stipulation as to whether a forty-seven page report by the divorce master dated August 21, 2007 (the "Report") had been incorporated into the final divorce decree. A stipulation was filed by Debtor and S&L on January 29, 2010 stating that the Report was incorporated into the decree.[2]

## II. Factual Findings

Debtor's marriage of ten years was dissolved by a divorce decree entered by the Court of Common Pleas of York County, Pennsylvania on June 13, 2008. The master's Report made recommendations for the resolution of economic issues concomitant to the dissolution of the marriage. In a section of the Report entitled "Recommendations with Respect to Equitable Distribution," the divorce master recommended that 67% of the marital property be distributed to Debtor and the remaining 33% to Miller. (Stock 1 p. 32). After distributing specific property to each party, the divorce master determined that a "cash adjustment" of $85,500.00 was required to effectuate this 67%/33% division of assets. Miller was given the option of paying the $88,500.00

---

[2] I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(L). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

2

in a lump sum or in monthly installments of $982.53 over nine years at 6%. In a footnote to this recommendation, the divorce master stated:

> The master wishes to make it crystal clear that Wife will need this money to pay her necessary living expenses, particularly the mortgage, taxes, insurance, and upkeep on the marital residence. This obligation should not be dischargeable in bankruptcy.

( Stock 1 p. 33).[3]

Debtor was twenty-six years of age and Miller thirty-nine years of age on the date of the hearing before the divorce master. According to the Report, Debtor and Miller shared joint custody of their three young children.[4] At the time of the hearing before the master, Miller was earning more than $67,000.00 a year while Debtor was earning around $1,300.00 annually by cleaning houses. The divorce master found that Debtor had no job skills, "so the best she could hope for in the immediate future" was to find a minimum wage job. After applying the factors mandated by the Pennsylvania Divorce Code, 23 Pa. C.S. § 3701(b), the divorce master determined that alimony was appropriate for a period of two years to enable Debtor to obtain additional education. In his analysis of Debtor's need for alimony, the divorce master observed that the "recommended distribution of property will provide [Debtor] with a house to live in and

---

[3]The master went to great lengths in the Report to ensure that Debtor would enjoy an equitable interest in and the exclusive right to occupy the marital residence. At the time of the parties' divorce, the marital home was titled in the name of Miller alone.

[4]The Report further indicated that the shared arrangement was "under appeal to the Superior Court." No additional information was placed on the record as to any changes in custody that may have taken place as a consequence of the appeal. Debtor's Schedule I lists the children as "dependents of debtor and spouse."

3

the money to take care of the mortgage, taxes, insurance, and maintenance . . . " ( Stock 1, p. 40).

More than two years since the divorce master issued his report, Debtor remains unemployed. In Schedule I, Debtor lists her occupation as "homemaker" and notes that her "monthly income" consists of $1,450.00 in "child support payments," $550.00 in "alimony" and $1,000.00 in "maintenance." Debtor's Statement of Financial Affairs shows no income from any source other than Miller in the two calendar years prior to the filing of her bankruptcy petition. At the hearing before me the parties stipulated that the amount of the Award was reasonably necessary for Debtor's support.

### III. Discussion

The resolution of the objections turns on the interpretation of the phrase "alimony, maintenance or support" in 11 U.S.C. § 522(d)(10)(D). This provision states that:

> (d) The following property may be exempted under subsection (b)(2) of this section:
>     (10) the debtor's right to receive –
>     (D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

11 U.S.C.A. § 522(d)(10)(D).

"[E]xemptions are generally construed broadly in favor of the debtor." *In re Martin*, 269 B.R. 119, 121 (Bankr. M.D. Pa. 2001) (citing *In re Barker,* 768 F.2d 191, 196 (7th Cir. 1985)). When a party objects to a debtor's exemption claim, it bears the burden of proving that a particular exemption is not available. Fed. R. Bankr. P. 4003(c); *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005). Accordingly, in this case S&L and the Trustee bear the burden of proving that the Award does not constitute "alimony, support or maintenance" under § 522(d)(10)(D).

4

*A. Applicability of Gianakas*

In *In re Gianakas*, 917 F.2d 759 (3d Cir. 1990), the Court of Appeals for the Third Circuit observed that "although the decree or settlement establishing the obligation almost invariably arises in the context of a state court proceeding, whether the obligation is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code is a question of federal, not state, law." *Id.* at 762 (citations omitted).[5] If a state court designates an award as something other than alimony, support or maintenance, this label does not control a bankruptcy court's finding as to its true function. *Smith v. Pritchett (In re Smith)*, 398 B.R. 715, 721 (B.A.P. 1st Cir. 2008). The Court of Appeals in *Gianakas* set forth a three-pronged test to be applied when a court must decide whether or not a marital obligation should be considered as "alimony, maintenance or support."

The facts in *Gianakas* are different from the facts in the case at bar in two important respects. The Court of Appeals' decision was rendered in the context of an objection to the discharge of a debt under 11 U.S.C. § 523(a), not an objection to property exemption claim under § 522(d)(10)(D). Also, in *Gianakas*, the parties had entered into a consensual agreement. In the case at bar, the issues of alimony and property division were determined by a divorce master.

---

[5]Under Pennsylvania law, "'[a]limony' is a payment of support . . . to meet needs of the other former spouse who is unable to support himself or herself through appropriate employment." *Johnson v. Johnson*, 864 A.2d 1224, 1229 (Pa. Super. 2004). "Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony . . . is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (italics omitted).

5

Therefore, before applying the *Gianakas* factors, I must determine whether these factual differences make the holding in Gianakas distinguishable from the case at bar.

In *Gianakas,* the Court of Appeals held that whether an award is a support obligation or something else must be determined by ascertaining the intent of the parties at the time of the settlement agreement. *Gianakas* at 762. Several courts in this circuit have determined that where there is no settlement agreement, the intent of the state court issuing the divorce decree is substituted for the intent of the parties when making a determination as to whether an award is in the nature of support or is a division of property. *Shirey v. Shirey,* 1998 WL 107031, 3 (E.D. Pa.) (citing *Pollock v. Pollock (In re Pollock)*, 150 B.R. 584, 588 (Bankr. M.D. Pa. 1992); *Marker v. Marker (In re Marker)*, 139 B.R. 615, 621 n. 2 (Bankr. M.D. Pa. 1992); *Rooker v. Rooker,* 116 B.R. 415, 417 (Bankr. M.D. Pa. 1990). See also *In re Werthen,* 329 F.3d 269, 273 (1st Cir. 2003)("Nominally, the critical issue is whether the divorce court judge 'intended' a particular award to be for support or for something else.") I find the reasoning of these decisions to be persuasive. Accordingly, if it otherwise is appropriate to apply the *Gianakas* factors to the facts in the within case, this Court will apply the factors to ascertain the intent of the York County Court of Common Pleas in issuing the Millers' divorce decree.

Most of the published case law, like *Gianakas,* define alimony, support and maintenance in the context of a dischargeability determination under § 523(a)(5).[6] Published case law

---

[6]The text of § 523(a)(5) was altered substantially by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which provides that "domestic support obligations" are non-dischargeable in bankruptcy proceedings. The term domestic support obligation is defined in §101(14A) and is based on concepts that were included in the description of alimony, maintenance and support in § 523(a)(5) of the prior statute. Accordingly, courts in the Third Circuit continue to follow the guidance provided in *Gianakas* to determine whether an award serves the function of a domestic support obligation.

defining these terms in the context of exemptions under § 522(d)(10)(D), however, is "scarce." *In re Brown*, 391 B.R. 210 (6th Cir. BAP 2008) (unpublished disposition); *In re Evert,* 342 F.3d 358, 363-64 (5th Cir. 2003) ("There is little precedent defining "alimony" for purposes of § 522(d)(10)(D)"). Further, the courts that have addressed this issue have not used a common approach.

### 1. Defining § 522(d)(10)(D) by the same standards as § 523(a)(5)

When deciding whether or not an award is exempt under § 522(d)(10)(D), most courts have relied on the criteria applied in disputes over the dischargeability of alimony, support and maintenance under § 523(a)(5). *Evert*, 342 F.3d at 366 ("nearly all the courts that have considered the question have determined that the same interpretation given to [§ 523(a)(5)] should also be applied to § 522(d)(10)(D)"). A Florida bankruptcy court in *In re Benjamin*, 136 B.R. 574 (Bankr. S.D. Fla. 1992) relied without discussion on prior bankruptcy cases involving § 523(a)(5) when it decided that a "lump sum alimony award was one of an equitable distribution award in the nature of a property settlement. . . ." and, thus, not exempt under § 522(d)(10)(D). *Id.* at 576 -77. Noting the dearth of case law on this issue, a Connecticut court in *In re Joseph*, 157 B.R. 514 (Bankr. D. Conn. 1993) concluded that "[t]here is no readily apparent reason why a bankruptcy court should use different standards in reviewing alimony awards in the nondischargeability instance and in the exemption instance." *Id.* at 517-18. *See also In re Ellertson*, 252 B.R. 831, 833 (Bankr. S.D. Fla. 2000).

### 2. In re Evert factors

In *In re Evert*, the Court of Appeals for the Fifth Circuit explored the issue of whether alimony, support and maintenance should be defined by one set of criteria in the dischargeability

7

context and another in the exemption context. Ultimately, *Evert* did not decide whether the two sections could be interpreted identically. Rather, the Court articulated its own criteria for determining whether divorce-related debts were exempt under § 522(d)(10)(D). The Court of Appeals held that if

> in the agreed divorce decree there is 1) also a meaningful separate alimony provision, 2) the obligation in question is described as being part of the property division, 3) the label given to the obligation in question is matched by its actual characteristics, and 4) the evidence does not suggest the parties conspired to disguise the true nature of the obligation in order to subvert the bankruptcy or tax laws," then the label given by the state court is sufficient and there is no need to "look behind" it to determine whether it is really alimony or a property settlement.

*Evert*, 342 F. 3d at 368.

In *In re Korwin*, 379 B.R. 80, 84 (Bankr. W.D. Pa. 2007), Judge Bentz favorably cited *Evert*'s four criteria and concluded that he did not need to "look behind the label" of a state decree because the state court order was not ambiguous. Alternatively, if the language of the state court order had been ambiguous, Judge Bentz determined that application of the *Gianakas* factors would have been appropriate. *In re Korwin*, 379 B.R. at 85.[7]

### 3. *Harbaugh* approach

In *In re Harbaugh*, 257 B.R. 485 (E.D. Mich 2001), the District Court for the Eastern District of Michigan suggested yet another approach. The *Harbaugh* court held that the intent of the parties in drafting the provisions of a marital settlement agreement or the intent of the court in issuing an order determined whether a divorce-related award was alimony, maintenance or

---

[7]I respectfully disagree with Judge Bentz's finding that a bankruptcy court must accept a state court's characterization of an obligation as constituting either support or a property division unless the bankruptcy court finds that the provision in a marital settlement agreement is ambiguous.

8

support or a division of property for exemption purposes under § 522(d)(10)(D). *Harbaugh* arrived at this approach through an examination of the legislative history of § 522(d)(10)(D). "Congress intended for section 522(d)(10)(D) to exempt only those monies, and potentially other equivalent awards, that concern general spousal sustenance."*In re Harbaugh*, 257 B.R. at 491. "Therefore, section 522(d)(10)(D), when read as a whole, exempts any payments from the bankruptcy estate that (1) are intended by the parties or the state court to support a spouse and (2) are, in the judgment of the bankruptcy court, reasonably necessary for such purpose." *Id.* At least one recent decision, *In re Brown*, 391 B.R. 210 (B.A.P. 6th Cir. 2008) (unpublished table decision) found *Harbaugh* to be "persuasive" and remanded the case before it to the bankruptcy court for the application of the two *Harbaugh* factors. *Id.*

     *B. Application of Gianakas factors*

I have considered the relative merits of each of these approaches to the issue, and I have determined that the factors set out by the Court of Appeals in *Gianakas* should be applied when examining an exemption claim under § 522(d)(10)(D). In *Gianakas*, the Court of Appeals did not limit its holding to matters under § 523(a)(5), but broadly stated that "whether the obligation is in the nature of alimony, maintenance or support for the purposes *of the Bankruptcy Code* is a question of federal, not state, law." *In re Gianakas*, 917 F.2d at 762 (italics added). Moreover, I find it inappropriate to confuse bankruptcy jurisprudence by defining a single concept – spousal support – in two different ways depending on the section of the Bankruptcy Code that is to be applied.

The cases cited above are largely concerned with the "label" attached to a divorce-related award by the state court and a bankruptcy court's ability to ignore that label in favor of

9

Case 1:09-bk-03336-MDF    Doc 52    Filed 02/05/10    Entered 02/08/10 07:55:24    Desc
Main Document    Page 9 of 12

examining the substance of the award. In the within case, S&L relies on the positioning of the Award within the Master's findings regarding equitable distribution. Specifically, the master includes the Award within the section of his Report labeled "Discussion and Conclusions of Law with respect to Equitable Distribution." (Stock 1, pp. 14 - 31). Even the footnote on which Debtor relies to argue that the Award is alimony falls within the Report's "Recommendation with respect to Equitable Distribution" (Stock 1, pp. 32 - 34) and not within the Report's "Recommendation with respect to Alimony." (Stock 1, p 43.) Debtor does not appear to dispute that the "label" attached to the Award is clear. Instead, Debtor asserts that the label is irrelevant because the Report states that the substantive purpose of the Award is to provide for Debtor's support.

The first factor cited by the Court of Appeals in the *Gianakas* decision is "the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary." The Court observed that a state court may intend for an obligation designated as a property settlement to serve as support because the divorce court is not considering support in a vacuum, but in the context of the parties' entire financial situation. Second, the Court instructed that "the parties' financial circumstances at the time of the settlement" should be considered. Custody arrangements and the employment status of each spouse at the time of the divorce are cited as matters to be considered by the bankruptcy court. Finally, the bankruptcy court must consider "the function served by the obligation at the time of the divorce or settlement." The Court of Appeals noted that "[a]n obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support." *In re Gianakas*, 917 F.2d at 762-63.

In this case, the language and substance of the Report's footnote makes it "crystal clear" that the Award was not just "related to" Debtor's need for support – it was founded upon that need. Moreover, S&L specifically stipulated that the Award was necessary for Debtor's support.[8] Thus, the first *Gianakas* factor favors a finding that the Award was in the nature of support. Regarding the parties' relative financial circumstances, the Report makes numerous findings showing the substantial disparity in the parties' employment and their respective potential for future earnings. Miller had substantial real estate holdings and business interests at the time of the divorce, while Debtor had no real estate, no business interests and no marketable skills to enable her to retain employment at more than the minimum wage. Accordingly, the Report structured the alimony provision to enable Debtor to attend college so she could be trained as a court reporter. Therefore, the second prong of the *Gianakas* test for establishing a support obligation is met. Finally, the Report pointedly states that the Award was necessary for Debtor's support while she obtained job training. The Award is an obligation that was structured to enable Debtor to maintain daily necessities such as food, housing and transportation during a transitional period. Therefore, I find that the application of the *Gianakas* factors clearly establishes that the Award was intended by the state court to serve as support and was not a division of property.

---

[8]In the absence of this stipulation this Court would have been required to determine whether the Award was reasonably necessary for Debtor's support at the time of the hearing on this matter. Debtor's schedules clearly demonstrated that her only source of support on the date of the filing of the petition was from support she receives from Miller and that her employment status has not changed since the entry of the divorce decree.

## IV. Conclusion

As indicated earlier in this Opinion, exemption claims are liberally construed in order to promote the "fresh start" purposes of federal bankruptcy law. I find that permitting Debtor to exempt the Award is in keeping with this bankruptcy objective. Therefore, the objections to Debtor's exemption of the Award is overruled and an appropriate order will follow.[9]

By the Court,

Mary D. France
Chief Bankruptcy Judge

Date: February 5, 2010

*This document is electronically signed and filed on the same date.*

---

[9] The situational irony present in this ruling is not lost on the Court. It is unfortunate that the very party who secured the alimony award on Debtor's behalf, Debtor's divorce counsel, will not be compensated for its services, which secured the means for Debtor to meet her basic needs.

12